U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED- LAFAYETTE

APR 2 0 2009

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| NEIL GUIDRY | CIVIL ACTION NO. 07-0223 |
| VERSUS | JUDGE DOHERTY |
| ST. JAMES MARINE, INC, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment filed by defendant and third-party plaintiff Hercules Offshore Corporation ("Hercules") [Doc. 42]. In its motion, Hercules "moves the Court to grant summary judgment in its favor and order Bois d'Arc Offshore, Ltd ("Bois d'Arc") to defend and indemnify Hercules from and against the claims of Plaintiff in the captioned matter and to reimburse Hercules the attorneys' fees and costs incurred in the defense of this claim." Bois d'Arc has filed an opposition brief [Doc. 48], arguing Hercules is not entitled to defense and indemnity, and Hercules has filed a reply brief [Doc. 51]. Bois d'Arc filed a response to Hercules's reply brief [Doc. 55]

For the following reasons, Hercules's motion for summary judgment [Doc. 42] is GRANTED.

I.  **Factual and Procedural Background**

Plaintiff, a technician, alleges that on February 10, 2004, he slipped and fell in "oil/grease/mud" while descending a stairway on the Hercules drilling vessel, the ODIN VICTORY.[1]

---

[1] *See* Plaintiff's Complaint, Doc. 1, ¶7.

Plaintiff sued Hercules; his employer, St. James Marine, Inc.; and Porterhouse Offshore, L.L.C.[2] On January 29, 2008, Hercules filed a third-party complaint against Bois d'Arc for defense and indemnity, as well as for all fees, costs and expenses associated with the defense of the matter and for indemnity against the claims of the plaintiff against Hercules [Doc. 22].

With respect to the instant motion, the following facts are undisputed:

1. At the time of the accident that is the subject of the Complaint of plaintiff, the *ODIN VICTORY* was under contract to Bois d' Arc pursuant to a Jackup Drilling Contract dated May 4, 2001 between Bois d' Arc and Hercules.

2. At the time of the subject accident, plaintiff's payroll employer was St. James Marine, Inc.

3. At the time of the subject accident, St. James Marine, Inc. had a contract with American Workforce Solutions, LLC ("American Workforce") and through this agreement, plaintiff was performing services on behalf of American Workforce.

4. At the time of the subject accident, American Workforce had an agreement with M-I, LLC and through this agreement, plaintiff was performing services on behalf of M-I, LLC.[3]

5. At the time of the subject accident, M-I, LLC was performing services aboard the *ODIN VICTORY* for Bois d' Arc.

6. Section 9.4 of the Hercules/Bois d' Arc Jackup Drilling Contract states:

> Operator [Bois d' Arc] shall be responsible for and hold harmless and Indemnify Contractor [Hercules] from and against all claims, demands, and causes of action of every kind or character arising in connection herewith in favor of Operator's Personnel or Operator's invitees or in favor of any third party's

---

[2] The role of Porterhouse has not been explained to this Court in the instant motion.

[3] The contract between M-I, L.L.C. and American Workforce is entitled "Contract to Hire Agreement." *See* Exhibit "4" attached to Hercules's motion for summary judgment, Doc. 42. Although not explained by the parties in the briefing, it appears M-I, LLC hired "American Workforce employees" on a "contract to hire" basis.

subcontractors and Invitees, on account of bodily
injury, death, or damages to property.[4]

7. Section 9.10(a) of the Hercules/Bois d' Arc Jackup Drilling Contract states:

> The parties intend and agree that the phrase "be
> responsible for and hold harmless and Indemnify" in
> Paragraphs 6.6, 6.7 and 9.1 through 9.9 hereof means
> that the indemnifying party shall release, indemnify,
> hold harmless and defend (including payment of
> reasonable attorney's fees and costs of litigation) the
> indemnified party from and against any and all awards
> of any kind or character, without limit and without
> regard to the cause or causes thereof . . .[5]

Hercules contends that, pursuant to Section 9.4 of the Hercules/Bois d'Arc Jackup Drilling Contract, Bois d'Arc is obligated to defend and indemnify Hercules from and against any and all claims by plaintiff related to his work on the *ODIN VICTORY*.

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response by affidavits or as otherwise

---

[4] *See* Hercules/Bois d'Arc Jackup Drilling Contract, attached as Exhibit "1" to Hercules's Motion for Summary Judgment, Doc. 42.

[5] *Id.*

-3-

provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

This Court notes the usual rules of contractual interpretation determine the availability of indemnity under indemnity agreements. The parties agree the Hercules/Bois d'Arc Jackup Drilling

Contract is a maritime contract. Therefore, this Court will assume for purposes of this motion only that the contract at issue is a maritime contract.

As this court explained in *Brodie Simon v. International Marine, L.L.C.*, 2008 WL 4609989 *6 (W.D.La. 2008), the construction of a maritime contract is governed by maritime law. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir.1986), *citing Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). Under federal maritime law, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.1986).

"A maritime contract containing an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir.1992), *citing Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir.1984). *See also Fontenot*, 791 F.2d at 1214 (court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous); *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983). An indemnity clause will not afford protection unless its terms are expressed unequivocally. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th 1981). Interpretation of the terms of a contract is a matter of law, reviewable de novo on appeal. *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir.1985),

*citing Kemp,* 745 F.2d at 924; *see also City of Austin v. Decker Coal Co.,* 701 F.2d 420, 425 (5th Cir.1983), *cert. denied,* 464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Matador Drilling Co v. Post,* 662 F.2d 1190, 1195 (5th Cir.1981).

In the instant case, Section 9.4 of the Hercules/Bois d'Arc Jackup Drilling Contract requires

"Operator" [Bois d'Arc] to "be responsible for and hold harmless and indemnify 'Contractor' [Hercules] from and against all claims, demands, causes of action of every kind and character arising in connection herewith in favor of Operator's Personnel or Operator's invitees or in favor of any third party's subcontractors and Invitees, on account of bodily injury, death, or damages to property."

Additionally, Section 1.1(e) of the Hercules/Bois d'Arc Jackup Drilling Contract defines "Operator's Personnel" as

the ***personnel of Operator***, and ***personnel of Operator's other contractors***, to be provided by operator from time to time in connection with operations thereunder.

(emphasis added).

Therefore, Section 9.4 it would seem, creates an indemnification obligation in favor of three separate groups of individuals: (1) "Operator's personnel;" *or* (2) "Operator's invitees;" *or* (3) "any third party's subcontractors and invitees." Hercules focuses on the first category – "operator's personnel" – contending Bois d'Arc hired "M-I, LLC's personnel" to perform services aboard the *ODIN VICTORY*, and plaintiff was working as one of "M-I, LLC's personnel." Therefore, Hercules contends plaintiff was one of the "personnel of Operator's other contractors" pursuant to Sections 1.1(e) and 9.4 of the Hercules/Bois d'Arc Jackup Drilling Contract. Consequently, Hercules contends Bois d'Arc is obligated to indemnify Hercules, and that, pursuant to Section 9.10(a) of the Hercules/Bois d'Arc Jackup Drilling Contract, the obligation to indemnify includes the obligation to defend Hercules in the present action and to pay the costs of reasonable attorneys' fees and costs

of litigation.

In response, Bois d'Arc focuses on the third category – "any third party's subcontractors and invitees," contending the term "any third party's" includes M-I, LLC but not American Workforce or St. James. Bois d'Arc argues it contracted with M-I, LLC to provide labor for its drilling operations, and that M-I, LLC contracted with American Workforce Solutions, LLC, which, in turn, contracted with St. James Marine. Bois d'Arc contends it agreed to defend and indemnify Hercules against claims made by "any third party's [M-I] subcontractor's [American Workforce]," and that the obligation *does not extend to employees of St. James*. Specifically, Bois d'Arc contends it did not agree to defend and indemnify Hercules against all claims made by an employee of Bois d'Arc's subcontractor's [M-I] subcontractor's [American Workforce] subcontractor [St. James], and that plaintiff – as an employee of St. James – is too far removed for Bois d'Arc to owe Hercules defense and indemnity for his claims.

In addition to the arguments of the parties, this Court is further guided by the language contained in the employment contracts attached to Hercules's motion for summary judgment. The contract between St. James and American Workforce, entitled, "Work Agreement Between St. James, Inc. and American Workforce Solutions, LLC," states as follows:

> **D. Status Independent Contractor**
> The CLIENT [American Workforce Solutions, LLC] shall be an *Independent Contractor.* Nothing in this agreement is intended to constitute either party as a subsidiary, a joint venture, *or an employee of the other for any purpose whatsoever.*
> . . .[6]

Additionally, in the "Contract to Hire" Agreement executed by American Workforce Solutions, Inc. and M-I, LLC on January 15, 2004, the agreement makes clear that pursuant to the

---

[6] See Exhibit "3" to Hercules's motion for summary judgment.

contract language the employees referenced in the agreement are "AWS employees," not M-I, LLC employees and no evidence has been presented to the contrary.

Thus, in the instant case, it would seem, pursuant to the contracts at issue, when the plaintiff began performing services for M-I, LLC, he remained an employee of St. James. The St. James/American Workforce Contract specifically addresses the employment status of St. James employees vis-á-vis American Workforce and does not contemplate a shifting of employment status. Stated another way, *plaintiff remained an employee of St. James* and did not by virtue of the St. James/American Workforce Contract, nor the M-I, LLC/American Workforce Contract, shift his employment status. Thus, plaintiff's status as "personnel" of St. James was not shifted pursuant to contract.

The contracts at issue arise out of the "oil patch," an industry that does not, as a matter of custom within the industry, transfer employment status one company to another merely by the providing of services for or to a given company. The industry is one embracing many specialized services which come together in concert at various stages of the drilling and production process. To suggest employment status shifts to the original contracting company anytime specialized services are provided anywhere within that concert of services, would lead to an absurd result, in direct conflict with the reality of the industry, and with existing jurisprudence. Therefore, although plaintiff may have been on the *ODIN VICTORY* by way of multiple contracts and subcontracts pursuant to the contracts, he remained, for these purposes, an employee of St. James. There being no evidence presented to the contrary, this Court finds, for these purposes, plaintiff was not "working as one of M-I, LLC's personnel" merely by virtue of the chain of employment contracts at issue. Therefore, this Court concludes plaintiff was not one of the "personnel of Operator's [Bois d'Arc's]

other contractors" pursuant to Sections 1.1(e) and 9.4 of the Hercules/Bois d'Arc Jackup Drilling Contract.

As neither party has argued that the second category of covered individuals – "Operator's invitees" – is applicable in this case, this Court assumes this argument is not before the Court. Therefore, this Court now turns its attention to the third category of covered individuals, that is, "any third party's subcontractors and invitees," and specifically, "any third party's subcontractors." Bois d'Arc argues M-I, LLC is a "third party" contemplated by the Hercules/Bois d'Arc Jackup Drilling Contract, without indicating why American Workforce could not, also, be considered a third party under the Hercules/Bois d'Arc Jackup Drilling Contract. Similarly, Bois d'Arc argues the term "any third party's *subcontractors*" includes American Workforce, but not St. James without persuasive explanation. Bois d'Arc has provided this Court with no jurisprudential basis for its argument.

In order to determine whether Bois d'Arc owes Hercules defense and indemnity under this provision, it is necessary for this Court to determine the meaning of the terms "third party" and "subcontractor" as those terms are used in the Hercules/Bois d'Arc Jackup Drilling Contract. The terms are not defined in the contract, and neither party has provided this Court with jurisprudential interpretations of the terms. Therefore, this Court looks to the terms plain meaning within the normal custom and practice of the industry at issue, i.e., the oil and gas industry, and a common sense application if neither is a term of art within the industry. Neither party has agreed either term is a term of art peculiar to the oil and gas industry, thus this Court will move on into the inquiry.

First, this Court notes the common sense application of the term "third party" within the law as a general matter, denotes a party that is, by definition, *not a party to the contract at issue.* Furthermore, this Court notes the oil and gas industry generally contemplates multiple subcontracts

in drilling and production, and in the instant case specifically, the Hercules/Bois d'Arc Jackup Drilling Contract clearly contemplates such third party subcontracts, *as the contract clearly and expressly provides for them*:

> Operator [Bois d'Arc] shall be responsible for and hold harmless and indemnify Contractor [Hercules] from and against all claims, demands, causes of action of every kind or character arising in connection herewith *in favor of Operator's Personnel or Operator's invitees or in favor of **any third party's subcontractors** and Invitees, on account of bodily injury, death, or damages to property.*

Here, Bois d'Arc argues to limit the term "third party" to entities that have contracted *with it* only, hence, the argument that *only M-I, LLC* can be a "third party" as contemplated by the Hercules/Bois d'Arc Jackup Drilling Contract, as M-I, LLC is the only entity that has contracted with Bois d'Arc. From there, Bois d'Arc further limits the universe of covered individuals to those individuals providing services for *American Workforce*, as those individuals are the only *direct subcontractors* of M-I, LLC. Bois d'Arc however, provides this Court with no jurisprudential support for its argument that individuals directly employed by *St. James* would not be covered by the language of the contract, rather merely argues the fact that Bois d'Arc did not know of the chain of contracts, and specifically did not know that American Workforce contracted with St. James for employees should support such a finding. However, actual knowledge, in a situation such as this, where subcontractors are usual within the given industry and specifically contemplated by contract, is not alone controlling. Bois d'Arc has admitted it similarly did not know M-I, LLC contracted with American Workforce and it acknowledges its obligation to indemnify those individuals providing services for American Workforce. Therefore, knowledge is not controlling of Bois d'Arc's obligation to indemnify. Rather, this Court must determine the status of St. James under the Hercules/Bois d'Arc Jackup Drilling Contract, i.e., whether St. James can be considered a

"subcontractor" of M-I, LLC, or a third party, or neither or both.

The foregoing leads this Court to the final term that is also undefined in the contract: subcontractor. Neither party has provided this Court with a jurisprudential interpretation of the term when used in this particular contractual context, therefore this Court must give the term its plain meaning within the normal custom and practice of the oil industry and common sense application. The Fifth Circuit has defined "subcontractor" as "one who takes a portion of a contract from the principal contractor *or another subcontractor*." *Avondale Industries, Inc. v. International Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994). As this Court has previously noted, the oil and gas industry contemplates the utilization of multiple subcontractors and chains of subcontractors – not unlike the circumstances presented herein – wherein individuals are hired on a "contract for hire" basis much like the circumstances of this case. The contract at issue is broadly written and contains no language that terminates the obligation of Bois d'Arc to provide defense and indemnity at any specific degree. Rather, the contract obligates Bois d'Arc to provide defense and indemnity *to any "third party's subcontractors."* Plaintiff is a direct employee of St. James, which was a *subcontractor* of American Workforce, which was a *subcontractor* of M-I, LLC, which was performing services for Bois d'Arc at the time of plaintiff's alleged injury. Thus, St. James could be argued to have been a subcontractor of a third party – if M-I, LLC were, indeed, to be determined to be a third party – as the term "subcontractor" has been defined by the Fifth Circuit – *see Avondale v. Int'l Marine Carriers, supra* – by virtue of the chain of employment contracts that exist in this case. This Court notes Bois D'Arc has provided this Court with no jurisprudential or contractual support for its argument that St. James cannot be considered a "third party's subcontractor" pursuant to the express terms of the Hercules/Bois d'Arc Jackup Drilling Contract.

However, were this Court to find Bois d'Arc's argument that St. James is "too advanced in degree," to be considered a subcontractor of *M-I, LLC* pursuant to the language of the contract, this Court notes indemnification could, nonetheless flow, as an equally reasonable argument could be made that *American Workforce* is *a third party* under the terms of the contract – as American Workforce is not a party to the Hercules/Bois d'Arc Jackup Drilling Contract – and, as St. James is a subcontractor of American Workforce, argument could be made plaintiff would be a covered individual under that scenario and indemnification owed. Therefore, the reality would be that under either scenario, plaintiff, as an employee of St. James, would be a covered individual under the terms of the Hercules/Bois d'Arc Jackup Drilling Contract.

This Court is cognizant of the charge that "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which *reasonably appear to have been within the contemplation of the parties*, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.1986) (emphasis added). Here, the language in the contract expressly provides for defense and indemnity in favor of *any third party's subcontractors*, however those terms might be interpreted. As under either argument, the result would find its way to a determination St. James and its employee, plaintiff, would be covered by the Hercules/Bois d'Arc Drilling Contract and its indemnity provision – whichever is argued, this Court need not, for this limited purpose, determine which provision would apply – both, as noted, ending in a finding of application of the particular provision at issue.

Therefore, this Court concludes Section 9.4 of the Hercules/Bois d'Arc Jackup Drilling

Contract applies. As neither party has raised any other defense or hurdle to the application of the contract and Section 9.4, this Court GRANTS Hercules' motion for summary judgment and finds Bois d'Arc Offshore, Ltd. owes Hercules defendant and indemnity.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that motion for summary judgment [Doc. 42] is GRANTED. IT IS FURTHER ORDERED that Bois d'Arc Offshore, Ltd ("Bois d'Arc") shall defend and indemnify Hercules from and against the claims of plaintiff in the captioned matter and shall reimburse Hercules the attorneys' fees and costs incurred in the defense of plaintiff's claim against Hercules.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___20___ day of April 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE